## O'DELL v. BOYDEN.

(Circuit Court of Appeals, Sixth Circuit. November 27, 1906.)

No. 1,548.

1. BANKRUPTCY—MODE OF REVIEW—INTERLOCUTORY ORDER GRANTING INJUNCTION.

An interlocutory order granting an injunction, made by a District Court as a court of bankruptcy, is reviewable by appeal by the Circuit Court of Appeals under section 7 of the Circuit Court of Appeals act (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]), notwithstanding the jurisdiction of the District Court to grant such injunction is involved, where the nature of the cause or proceeding is such that the final decree therein would be reviewable by appeal under the provisions of such act, but is not so appealable where such final decree or order would be one in a "proceeding in bankruptcy" reviewable only on a petition to revise in matter of law under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—PROPERTY PASSING TO TRUSTEE—MEMBERSHIP IN STOCK EXCHANGE.

A membership in the New York Stock Exchange, which is personal to the holder, is evidenced by no certificate, and can only be transferred under the rules of the Exchange and by consent of its committee on admissions, but which has a pecuniary value, constitutes property, to which an equitable right may be given by an assignment, but which cannot be in fact transferred except by the substitution of a new member in accordance with the rules of the Exchange, and on the bankruptcy of the member then holding the same it passes into the possession of his trustee as assets of his estate notwithstanding any previous assignment, although it may be subject to the equities of the assignee, and its transfer and conversion into money can then only be effected pursuant to orders of the bankruptcy court. Being thus property of the estate in the custody of the court, a proceeding between the trustee and a prior assignee to determine the right to it or its proceeds is within the exclusive jurisdiction of such court, and is a "proceeding in bankruptcy" within the meaning of Bankr. Act July 1, 1898, c. 541. § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], and any order made therein is reviewable only on a petition to revise under said section, and not by appeal.

[Ed. Note.—Membership in stock exchange as an asset in bankruptcy, see note to Fisher v. Cushman, 43 C. C. A. 389.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio.

Lawrence Maxwell, Jr., and Thomas F. Shay, for appellant.

J. W. Peck, Benj. L. Heidingsfeld, Otis H. Fisk, and Louis Kramer, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal under section 7 of the Court of Appeals act (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]), from an interlocutory decree of the District Court, exercising jurisdiction as a bankrupt court, awarding an injunction. There is a motion to dismiss the appeal on the ground that the decree is not final, and therefore not appealable. But an appeal is allowed under section 7 of the Court of Appeals act from an interlocutory decree awarding an injunction, and the appeal prayed is expressly limited to the decree of January 29, 1906, awarding an interlocutory injunction, and is not taken from a final decree, nor sought to be sustained except as an appeal under section 7 of the Court of Appeals act. Neither is it ground for denying an appeal under section 7 that the right of the court below to issue the injunction complained of involves the jurisdiction of that court. If this court would have jurisdiction of an appeal taken from a final decree in the cause, it may entertain jurisdiction of an appeal from a decree granting an interlocutory injunction, although the jurisdiction of the court may be involved. Lake Nat. Bank v. Wolfeborough Sav. Bank, 78 Fed. 517, 24 C. C. A. 195; McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118, 35 L. Ed. 893; United States v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87. It is, however, essential that we shall inquire into the jurisdiction of the court below; for, if the injunction was allowed in a cause of a character subject only to review in matters of law under the supervisory powers of this court under section 24b of the bankrupt act of July 1, 1898 (30 Stat. 553, c. 541 [U. S. Comp. Ct. 1901; p. 3432]), no appeal will lie to this court under the seventh section of the Court of Appeals act. In such case the interlocutory order allowing the injunction would not be one pronounced "in a cause in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals," and appellant's only remedy would be a petition for review seasonably filed in this court under section 24b. The distinction between the two remedies has been made in the act "the provisions for appeal and for petition of review being mutually exclusive." In re Mueller, 135 Fed. 711, 68 C. C. A. 349; In re McMahon (decided by this court October 2, 1906), 147 Fed. 684; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; First National Bank of Chicago v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051.

The facts upon which the jurisdiction of the District Court depended are substantially these: On July 1st, the copartnership, doing business as "Holzman & Co.," and the individuals composing it, Ross Holzman, Alfred Holzman, and Charles Henrotin, were declared bankrupts. Charles Henrotin, one of the bankrupts, was and had been a member of the New York Stock Exchange since January 14, 1886. The membership is not evidenced by any certificate, and is personal in its

character. It may, nevertheless, be transferred under the conditions prescribed by the by-laws and rules of the exchange. Article 15, § 1, prescribes that:

"A transfer of membership may be made upon submission of the name of the candidate to the committee on admissions, and the approval of the transfer by two-thirds of the entire committee. Notice of the proposed transfer shall be posted on the bulletin in the exchange for at least ten days prior to the transfer."

The proceeds of any seat transfer must be disposed of as prescribed by other sections of article 15—(1) to payments of fines, dues, and assessments; (2) to payment of creditor members of the exchange arising from contracts subject to the rules of the exchange; (3) the surplus of the proceeds of the transfer to the person whose membership is transferred, or his legal representatives, upon the execution by him of a release satisfactory to the committee on admissions.

December 27, 1902, Henrotin transferred this membership to a firm of which he was a member, styled "Feder, Holzman & Co." One-quarter interest he sold to his partners outright, and received for the same $20,000. The remainder he put into the firm as his contribution to the capital. March 2, 1905, Feder, Holzman & Co. dissolved, and a firm composed of Henrotin and the two Holzmans was organized. This is the bankrupt firm. This firm took over from the old firm this Stock Exchange seat as an asset of that firm. May 5, 1905, two of the members of this firm united in an assignment of this and other seats to the appellant O'Dell, in words and figures as follows:

. "Cincinnati, May 5th, 1904.

"W. J. O'Dell, Esq., City.—Dear Sir: For value received I and we hereby transfer to you all interest and privileges in the following seats and memberships:

"New York Cotton Exchange, July 10, 1902, Ross Holzman.
"Cincinnati Stock Exchange.
"Chicago Board of Trade, February 27, 1903, Charles Henrotin.
"New York Stock Exchange, January 14, 1886, Charles Henrotin.
"Chicago Stock Exchange.      Resp'y ,             Chas. Henrotin.
                                                    Ross Holzman.

"Witness: Ross Holzman.
"Witness: Chas. Henrotin."

The evidence tends to show and the claim of O'Dell is that this assignment was intended to secure $77,000, of which $52,000 was a debt contracted at the time for money loaned. Within a few days the firm of Holzman & Co., and the individual members of the firm, petitioned to be declared bankrupts, and in due course were so declared. Among the scheduled assets were the several memberships in Exchanges mentioned in the O'Dell assignment or the interest of the bankrupts therein. We are here concerned only with this membership in the New York Stock Exchange. On August following the trustee gave notice to the Exchange of his claim to the membership as an asset of the bankrupt firm. On October 6th the bankrupt court directed the trustee to take all necessary steps to sell this membership in accordance with the rules of the Exchange and subject to the approval of the court. The court also directed Henrotin to sign all assignments, transfers, and consents necessary to dispose of the seat under the rules of the Ex-

change. Through the Exchange a sale was made by the trustee of this seat to one Rothschild for $85,000, and Henrotin signed the necessary consents, releases, and transfers and the Exchange consented to the transfer to Rothschild. The proceeds of the sale were paid into the hands of the committee on admissions, and they were engaged in determining the debts chargeable against the proceeds under the Exchange rules preparatory to paying over the surplus to Boyden as trustee in bankruptcy. At this stage of the proceedings the trustee learned of the assignment to O'Dell and that he had given notice of his claim to the Exchange, though such notice was not given until after sale of the seat as before stated.

On December 9th the trustee filed this petition, in which he set out the facts substantially as we have already stated them, and asserted that this membership or seat was an asset which had passed to him as trustee, and was within his custody, control, and possession as the bankrupt's trustee; that he had just learned that the appellant, William J. O'Dell, claimed same under some form of assignment and had lately notified the Exchange of his claim to hold same as collateral security for a pretended loan to Holzman & Co. He averred that O'Dell by his claim and notice to the New York Stock Exchange was hindering and interfering with the steps he was taking under the order of the court to sell the same under the rules of the Exchange and to receive the surplus after satisfaction of prior claims of members of the Exchange had been satisfied. The prayer is that the court would make said O'Dell a party to the bankruptcy proceedings for the purpose of determining his claim and right under said assignment of May 5, 1905; that he be enjoined from instituting any suit against the New York Exchange, or the petitioner, or the bankrupts, in respect of said membership or its proceeds; and that he be required to come in and assert any right, interest, or lien he may have in the bankrupt court. Upon the day before the filing of this petition O'Dell filed a bill in the Superior Court of New York against the bankrupts, Boyden as bankrupt trustee, and the New York Stock Exchange, in which, after setting out his claim and the sale of the membership, he sought to have the surplus of the sale, after paying the claims first payable under the association rules, paid to him. A temporary injunction was awarded, enjoining the New York Stock Exchange from paying the surplus proceeds out until further orders of the court. The filing of this bill was unknown to Boyden when he filed this petition. The bankrupts, as well as Boyden, were not residents of New York, and have not yet been served nor appeared. O'Dell appeared in the bankrupt court for the purpose of denying the jurisdiction of the court, and to this end he denied the possession of this membership or the proceeds thereof by the bankrupt court or its trustee, and insisted that he was an adverse claimant in good faith, and that he was a citizen of Ohio, of which state the bankrupts were also citizens.

Upon a hearing the court held that this membership was an asset which passed to Boyden as trustee, and that as a species of property it came into the possession of Boyden as trustee, and had been reduced to money under the direction of the court and that the court had jurisdiction to determine any and all adverse claims to, or liens upon, the property, as an asset in custodia legis. O'Dell was enjoined from in-

stituting or carrying on any suit in respect to his claim in any other court and required to dismiss his suits pending in the courts of New York restraining the Stock Exchange from paying over proceeds of sale of said seat or membership to Henrotin's trustee. The court did not determine the validity or extent of O'Dell's lien, but reserved the merits of his claim for a further hearing. From the decree awarding an interlocutory injunction O'Dell has prayed an appeal under section 7 of the Court of Appeals act of 1891.

That O'Dell is an adverse claimant, in good faith, of an equitable lien upon Henrotin's "membership" in the New York Stock Exchange, or its proceeds now held by the exchange, must be conceded. That his claim could not be the subject of a suit in a United States court, between himself and Henrotin or the bankrupt firm of which he was a member, if bankruptcy proceedings had not been instituted, must also be conceded. Neither does the mere fact that bankruptcy proceedings are pending entitle the court below to entertain a controversy between the trustee and O'Dell without he shall consent. This he does not do, and there exists no ground for entertaining jurisdiction to adjudicate his claim or lien unless we shall agree with the court below in holding that the "membership" or "seat" was an asset which passed to the trustee and was in custodia legis when the petition was filed. But we cannot regard the fact that the seat had been sold and the proceeds were in the hands of the New York Stock Exchange when this petition was filed as depriving the bankrupt court of any custody or possession which it had before such sale. The court below, in asserting a claim to the possession of his property as an asset in the hands of its trustee, had directed the trustee to take the steps necessary to bring about a sale according to the conditions imposed by the Exchange, and had directed Henrotin to sign all releases, transfers, and consents necessary under the rules of the exchange to consummate a sale and transfer. These orders had been complied with, and the proceeds of the sale were in the hands of the Exchange for the purpose of discharging debts to members upon contracts under rules of the Exchange, and then to pay the surplus over to Boyden as trustee. If this peculiar kind of property passed to the trustee upon his appointment and was in his control and possession so far as such property is capable of being possessed, the bankrupt court did not lose possession by the steps taken under its direction to bring it to sale.

Did the bankrupt court have such custody of the "membership" or "seat" as to give it jurisdiction to bring in adverse claimants and adjudicate their rights? The New York Stock Exchange is an unincorporated association having a limited membership. No formal certificate of membership is issued, and, aside from repute, Henrotin's only evidence of membership consists in a letter notifying him of his election and asking him to sign the constitution and by-laws. This letter is the document referred to as the "certificate" assigned to O'Dell. Though the membership is personal, it is transferable, subject to the conditions imposed by the articles of the association already referred to. But the transfer is not made except by the acceptance of a candidate for membership who is elected in the room and stead of the retiring member. When a "transfer" of membership is made according to the terms which

clog such transfers, the transferee becomes a member and the transferror ceases to be one. It follows, therefore, that the mere execution of a paper preparatory to transferring or assigning a membership works no change in membership whatever. Thus in 1892, this same membership which was personal to Henrotin was transferred or assigned to a partnership of which he was a member. That did not deprive Henrotin of his "seat" or "membership." He continued to be a member and to exercise all of the privileges of a member. In May, 1905, he again joined one of his partners in transferring or assigning this same membership to the appellant, O'Dell. Nevertheless, he continued to be and act as a member, and O'Dell did not thereby become a member. What was, then, the effect of these transfers or assignments made of this "seat," first to Holzman & Co. and then to O'Dell? Though possessing none of the qualities of a negotiable or even a nonnegotiable instrument, this membership has a pecuniary market value and constitutes a property right, which, under the settled principles of the law, is capable of passing by will or inheritance. In re Hellman, 174 N. Y. 254, 66 N. E. 809, 95 Am. St. Rep. 582. Though its sale and transfer are clogged with onerous conditions and the property one of a narrow character, these conditions and characteristics go only to the reduction of the pecuniary market value, and do not deprive it of its character as property. Powell v. Waldron, 89 N. Y. 328, 42 Am. Rep. 301. As a valuable property right, incorporeal in character, it may be reached and subjected as property by a creditor through the flexible remedies of equity. A court of chancery through a decree in personam may compel the co-operation of the member in steps necessary to consummate a sale and transfer under the rules of the association. See Massie v. Watts, 6 Cranch, 148–157, 3 L. Ed. 181, as to the general powers of a court of equity through jurisdiction over the person, Ager v. Murray, 105 U. S. 126–131, 26 L. Ed. 942, where a patent right was subjected, and In re Emrich (D. C.) 101 Fed. 231. Such a seat constitutes a property right which is not only descendible, taxable and assignable, but is one which passes to the trustee of a bankrupt member, and the bankrupt court may compel the bankrupt to sign all transfers or consents essential to bring about its sale under the rules of the exchange. In re Ketchum (D. C.) 1 Fed. 840; In re Werder (C. C.) 15 Fed. 789; Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264; Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915; Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318. That an assignee or transferee in pledge or otherwise, would obtain such an equitable right as would enable him through the aid of equity to bring about its transfer through the co-operation of the member, cannot be doubted. If a creditor, having no equitable lien by contract, might obtain one by aid of equity, there is no reason why an assignee or transferee might not also. Powell v. Waldron, 89 N. Y. 328, 42 Am. Rep. 301; Nashua Savings Bank v. Abbott (Mass.) 63 N. E. 1058. Also see Fish v. Fiske, 154 Mass. 302, 28 N. E. 278, and Platt v. Jones, 96 N. Y. 24–29. Whether the assignments, first to Holzman & Co. and then to O'Dell and then, by operation of bankruptcy, to Boyden, take effect as equitable assignments of the surplus proceeds of a sale ultimately to be brought about under the rules of the Exchange and through the co-operation of the

assignor in the order of their making, or whether the assignee who first gave notice of the assignment to the Stock Exchange would be preferred over prior assignments upon the principles relating to the assignment of ordinary choses in action (see Dearle v. Hall, 3 Russ. R. 1, Loveridge v. Cooper, 3 Russ. R. 30, Foster v. Cockrell, 9 Bligh R. 332, 375, 376 and Clodfelter v. Cox, 1 Sneed (Tenn.) 330, 60 Am. Dec. 157), we need not consider. Clogged with the liens of the partnership debts of Holzman & Co., unless the transfer by two members of that firm was effectual to dispose of the equitable interest or lien of the partnership, about which we say nothing, incumbered by the claims of O'Dell, for whose security another and later transfer was made, so far as his claim may be valid and his security effectual, the "membership" —the "seat"—was never transferred or assigned in such a way that Henrotin ceased to be a member until the sale and transfer effectuated under the direction of the bankrupt court through the processes prescribed by the association and subject to the conditions which it had imposed. The transfer and assignment preceding bankruptcy may have fastened liens upon the pecuniary results of a valid sale and transfer which may be effectually enforced in the bankrupt court, but subject to such equitable liens as may result from such prior transfers or assignments. The "seat" or "membership" continued to be the "seat" of Henrotin, and was a pecuniary asset which passed to his trustee. It was as much in his custody and possession as such a species of property is capable of. To deny the trustee's possession would be to deny the capability of possession of a chose in action or other incorporeal right or equity. The possession may be constructive, and not manual; but it is only so because such property is not capable of a more tangible custody. Only through a court of equity can the pecuniary value of such an asset be realized to creditors or assignees. Only by decree in personam compelling the bankrupt member can such a transfer of membership be effectuated as will put the buyer in the place of Henrotin as a member. Over him for that purpose the bankrupt court has exclusive control, and in this sense, also, may it be said that the "seat" or "membership" was in custodia legis when the trustee sought the aid of the court to adjudicate the claims and liens asserted by O'Dell.

The "hearing" from which this appeal comes was a "hearing" under "a proceeding in bankruptcy" within the meaning of section 24b, as distinguished from "a controversy arising in bankruptcy proceedings," under section 24a. The distinction between the remedy by review in the one class of cases and by appeal in the other is pointed out in Holden v. Stratton, 191 U. S. 115, 24 Sup. Ct. 45, 48 L. Ed. 116, First National Bank of Chicago v. Chicago Title & Trust Company, 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, and by this court in the case styled In re McMahon (C. C. A., decided October 2, 1906) 147 Fed. 684, wherein we distinguished Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. In the case at bar the proceeding was instituted by the trustee's petitioner to bring in O'Dell to adjudicate his claim or lien against property alleged to be in custodia legis. That was the ground of the jurisdiction in the case

150 F.—47

of First Nat. Bank of Chicago. v. Chicago Title & Trust Co., and in In re McMahon. In both cases the facts made a "proceeding in bankruptcy" reviewable only in matter of law under section 24b. These cases govern this. So, too, the case is distinguishable in this respect from Loeser, Trustee, v. Savings Deposit Bank & Trust Company (decided with the present case) 148 Fed. 975. In the case last mentioned the res was voluntarily surrendered to the bankrupt trustee by a mortgagee in possession who came in and prosecuted his claim to a lien under a mortgage covering the property thus brought in by him. The appeal must be dismissed as no appeal will lie under section 7 of the Court of Appeals act of 1891 from an injunction awarded in course of such a proceeding.

Appellant will pay the costs of his appeal.