## In re GOTTLIEB & CO.

(District Court, D. New Jersey. September 17, 1917.)

1. BANKRUPTCY ⬤⟺212—OBJECTIONS TO JURISDICTION—WAIVER.

The receiver in bankruptcy filed a petition, alleging that the bankrupt had transferred all outstanding book accounts then in existence, and those that might thereafter be created, to a creditor for debts due and to become due, and that the assignment was a preference. The referee made an order restraining the creditor from collecting the accounts, and requiring him to show cause why he should not turn over moneys already collected. The creditor and receiver then agreed that the creditor should collect the accounts without delay, that the proceeds should be deposited in the name of the receiver, pending determination as to who was

entitled thereto, and that the order should be modified to permit such collection. The agreement stated that the creditor did not waive his right to object to the jurisdiction of the referee in determining the disposition of the book accounts. The creditor then filed an affidavit in response to the previous order to show cause, in which he claimed to be an assignee for a valuable consideration, and in possession, and insisted that the bankruptcy court had no jurisdiction to decide in a summary manner to whom the accounts belonged. Thereafter an order of the referee permitting the receiver, who had been appointed a trustee, to amend the petition, was sustained by the District Court. The preamble of such order recited that testimony was taken before the referee on the rule to show cause; but there was no formal order of the referee overruling the creditor's objection, though it appeared from his petition for review that such objection was overruled. *Held,* that the affirmance of the order by the District Court, as it did not deal with the question of adverse claimance, did not necessarily involve consideration of that question, and hence did not preclude the creditor from subsequently urging his objections to the jurisdiction.

2. BANKRUPTCY &⇒212—JURISDICTION—OBJECTIONS.

Where a creditor did not answer to the merits a petition of the referee seeking a recovery of book accounts assigned by the bankrupt until after his objection to the jurisdiction of the bankruptcy court to summarily determine the ownership of the accounts was overruled, the answer to the merits did not waive the objections to the jurisdiction.

3. BANKRUPTCY &⇒114(1)—RECEIVER.

After adjudication, the receiver, before the appointment of a trustee, in addition to his duty to preserve property actually in his possession, is a proper person to carry out any orders that the court might make, under Bankruptcy Act July 1, 1898, c. 541, § 2, subd. 15, 30 Stat. 545 (Comp. St. 1916, § 9586), for the enforcement of the provisions of the act and it is the receiver's duty, as well as his privilege, to bring to the court's attention any matters which suggest the advisability of making an order.

4. BANKRUPTCY &⇒212—JURISDICTION—SUMMARY PROCEEDINGS.

Under Bankruptcy Act July 1, 1898, § 23 (Comp. St. 1916, § 9607), declaring that the United States courts shall have jurisdiction of all controversies at law and in equity between trustees and adverse claimants, a referee in bankruptcy does not have summary jurisdiction to determine a creditor's right to collections already made under an assignment of book accounts by the bankrupt; the court of bankruptcy not having jurisdiction of the res.

5. ACCOUNT, ACTION ON &⇒18—BOOK ACCOUNTS—NATURE OF.

Book accounts are but evidence of money due, and are choses in action, as distinguished from choses in possession.

6. ACCOUNT, ACTION ON &⇒17—NATURE OF ACTION.

An action on book accounts is a recognized remedy to recover moneys due for goods sold and delivered; and the books of account, properly approved, are prima facie evidence of a right to recover.

7. BANKRUPTCY &⇒212—COURTS—JURISDICTION.

A bankrupt corporation passed a resolution providing that book accounts due and to become due should be assigned to a stockholder, who agreed to make advances to the bankrupt to enable it to carry on its business. The accounts were to be collected by the bankrupt and the proceeds paid over to the stockholder; the stockholder receiving duplicate statements of accounts. *Held* that, as the resolution contemplated that the accounts were to be collected by the bankrupt, the books of account remaining in the possession of the bankrupt, the trustee of the bankrupt, who obtained possession of the account books, had such possession of the res that the bankruptcy court might in a summary proceeding determine the rights of the parties to uncollected accounts.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Bankruptcy** ⬅160—Preferences—Evidence.

In a proceeding to set aside an assignment of book accounts by a bankrupt on the ground that it effected a preference, evidence *held* to show that the bankrupt was insolvent at the time the assignment was made.

**9. Bankruptcy** ⬅166(3)—Preferences—Evidence.

In a proceeding to set aside an assignment of book accounts on the ground that it effected a preference, evidence *held* to show that the assignee, a stockholder of the bankrupt corporation, who in consideration of the assignment agreed to make advances to the bankrupt, knew of its insolvency.

**10. Bankruptcy** ⬅165(1)—Preferences—Knowledge.

Where a stockholder in a bankrupt corporation, who was already a creditor, agreed to make further advances in consideration of an assignment to him of book accounts, the assignment will be treated as a preference, the value of the accounts assigned exceeding the amount of the advances and effecting a preferential payment on the debts already due the stockholder.

In Bankruptcy. In the matter of the bankruptcy of Gottlieb & Co. On review of referee's order adjudging that the bankrupt's transfer of book accounts to Adolph M. Rosenberg was void. Order of referee affirmed.

Philip J. Schotland, of Newark, N. J. (Edwin G. Adams, of Newark, N. J., of counsel), for Adolph M. Rosenberg.

Kessler & Kessler, of Newark, N. J. (Samuel I. Kessler, of Newark, N. J., of counsel), for trustee.

RELLSTAB, District Judge. This is a review of a referee's order dated November 10, 1916, which, so far as necessary to be stated, adjudged that a transfer of book accounts, made by Gottlieb & Co. (a New Jersey corporation, hereinafter called the bankrupt) to Adolph M. Rosenberg, on December 7, 1915, was fraudulent, constituted a preference, and was void against the trustee. It also commanded him to deliver to the trustee "all moneys in his possession or under his control which were collected from the said book accounts and which moneys were deposited in the National State Bank according to an agreement heretofore made between the trustee and the said Adolph M. Rosenberg," and that he refrain from making any further collections on said accounts.

The bankrupt was a manufacturer of hats, and was twice in bankruptcy, each time on involuntary petition. In the first proceeding there was no adjudication, but in July, 1915, it composed with its creditors, giving them notes for the full amount of their claims, payable in installments. Rosenberg was a stockholder, under disguise, of the bankrupt, from its organization, and a creditor of it in a large amount when said composition was effected. The present bankruptcy proceedings were begun February 2, 1916, on which date a receiver was appointed by this court. On February 4th, upon filing the company's written waiver of service of the petition and process and consent to an immediate adjudication, the company was adjudicated a bankrupt and the cause was referred. On February 8, 1916, the re-

ceiver filed a petition with the referee, alleging, inter alia, in substance, that on December 7, 1915, the bankrupt had transferred all outstanding book accounts then in existence and those that might thereafter be created to Rosenberg for debts due and to become due to him; that he believed said assignment was made as a preference, and for the purpose of hindering, defrauding, and delaying creditors. On the same day the referee made an order restraining Rosenberg from collecting said accounts, and requiring him to show cause why he should not turn over the moneys collected on said accounts to the receiver or the trustee, when appointed. On February 11th Rosenberg entered into an agreement with the receiver (the agreement referred to in the referee's order) whereby it was declared to be in the interest of the estate and Rosenberg that the accounts be collected without delay, and that an order be made modifying the restraint, so as to permit Rosenberg to collect the accounts upon certain conditions, among which were that the collections should be deposited in said National Bank of Newark in the name of the receiver, later to be changed to the trustee to be elected, and Rosenberg, and that the account should be held intact until it should be finally determined who was entitled thereto.

The referee made an order carrying out said agreement and Rosenberg collected some of the accounts, and deposited the money thus obtained in the bank. It is this deposit, amounting to the sum of $2,719.04, that the order under review directs Rosenberg to deliver to the trustee. In this agreement it was expressly stated that Rosenberg did "not waive his right to object to the jurisdiction of the referee in determining the disposition of the book accounts." On March 1, 1916, Rosenberg filed an affidavit in response to this rule to show cause, in which he claimed to be an assignee of said accounts for a valuable consideration, and in possession thereof, and insisted that the bankruptcy court had no jurisdiction to decide in a summary manner to whom said accounts belonged, and objected to its doing so.

On April 7th the referee made an order permitting the trustee (the receiver in the meantime having been appointed trustee) to amend the petition (presumably the one made by him as receiver), which order was subsequently sustained by Judge Haight of this court on a review instituted by Rosenberg. In the preamble of this order it is recited that testimony was taken before the referee on the rule to show cause, and from Rosenberg's petition asking for said review it would appear that the referee had ruled adversely to Rosenberg's objection to the court's jurisdiction. No formal order by the referee overruling said objection, or one by Judge Haight affirming the referee's order of April 7th appears of record; but counsel are agreed that the order of April 7th was affirmed.

On May 17, 1916, after the review had been disposed of, Rosenberg filed his answer to said petition and rule to show cause, in substance setting up that by a resolution passed on December 7, 1915, the bankrupt had assigned to him all its outstanding accounts then in existance and those that would be created in the future, in consideration of his supplying raw materials to the bankrupt, to enable it to con-

duct its business, and as security therefor, and that in reliance on said agreement he had supplied materials which inured to the bankrupt's benefit; that the agreement was not made as a preference, or for the purpose of hindering, defrauding, and delaying creditors, but to benefit creditors, by enabling the bankrupt to conduct its business and to earn profit; that he held the accounts that he might be reimbursed for the materials he had supplied after the assignment; that the accounts assigned to him and collected prior to the bankruptcy proceedings did not equal the amount of the indebtedness of the bankrupt for materials supplied by him in reliance upon the assignment; and that there is still due him for materials supplied, a sum in excess of the amount of the assigned accounts in dispute. This answer contained no objection to the jurisdiction of the court.

After summarizing the testimony taken on the issues thus made up, the referee certified his findings of fact to be:

"That Gottlieb & Co. was insolvent on the 7th day of December, 1915. That Adolph M. Rosenberg was familiar with and knew the financial condition of Gottlieb & Co. at all times, and particularly on the 7th day of December, 1915, and knew on that day that Gottlieb & Co. was insolvent. That there were creditors of Gottlieb & Co. existing at the time of the passing of the resolution whose claims amounted to about $59,000. That Adolph M. Rosenberg procured the transfer of the book accounts in question to himself with full knowledge of all these facts. That Adolph M. Rosenberg knew that the transfer of these book accounts would prefer him to the amount thereof over and above the other creditors of Gottlieb & Co. That the bankrupt intended by this transfer to create a preference in favor of Adolph M. Rosenberg."

He also certified his conclusion of law as follows:

"That the transfer of the book accounts by Gottlieb & Co. was a fraudulent transfer, and was made with the intent and purpose to hinder, delay, and defraud the creditors of the bankrupt, and was received by Adolph M. Rosenberg with full knowledge of the insolvency of the bankrupt and such transfer effected a preference in favor of Adolph M. Rosenberg, and is void as against the trustee, and that the question presented on this review is whether the transfer was fraudulent, and was given with the intention to hinder, delay, and defraud the creditors of the bankrupt, and was received by Adolph M. Rosenberg with full knowledge of the insolvency of the bankrupt, and did create a preference in favor of Adolph M. Rosenberg, and should be declared void as against the trustee, and whether the book accounts or their proceeds should be turned over to the trustee."

Under an arrangement between Rosenberg and the bankrupt, contemporaneous with the composition effected in the first bankruptcy proceedings, he was to loan his credit to the company to enable it to secure the raw materials needed to continue its business. The first installment of the composition notes fell due December 1, 1916. Before this, some time in November of that year, Rosenberg became apprehensive about the credit he was extending to the bankrupt, and a conference with the other stockholders was had, at which the financial condition of the bankrupt was considered. One of the results was an offer to pay to the creditors, on December 1st, 12½ per cent. of their claims, instead of 25 per cent., as agreed in the composition. This was accepted by nearly all the creditors, and paid by the bankrupt

on the date named.    Another result was the passage by the company's
directors on December 7, 1915, of the following resolution:

"Whereas, owing to the fact that the company has entered into an agree-
ment with all of its creditors whereby it has secured an extension of credit on
its past indebtedness, the company has been unable to secure credit on new
purchases to any great extent; and

"Whereas, Adolph M. Rosenberg is willing to supply all the raw material
that the company needs in the manufacture of its products, provided he is
secured against loss:

"Now, therefore, be it, and it is hereby, resolved that in consideration of the
said Adolph M. Rosenberg supplying to the company the raw material that it
requires in conducting its business, the company to secure him against loss
for all moneys that he has heretofore guaranteed the payment of, for the bene-
fit of the company, and against loss for any material he shall hereafter supply
to the company, hereby sells, transfers, and assigns all outstanding accounts
which the company now has, and all accounts which will in the future be
created, as soon as they are created, to the said Adolph M. Rosenberg; and
the financial officers are hereby authorized and directed, as soon as they re-
ceive any money, or its equivalent, in payment of any account, to draw the
company's check for the amount so received to the order of Adolph M.
Rosenberg. As soon as the amount received has been deposited and properly
credited to the account of the company, and the said Adolph M. Rosenberg to
turn over to the financial officers, out of the moneys so received by him, the
amount necessary for payroll each week, and at the end of each month, he
is to reimburse himself for the amount of material he has supplied to the
company, and the balance, if any, he is to return to the treasury of the com-
pany, to be used by the company in its business, in the regular manner.
For his services in this connection, Mr. Rosenberg is to receive the sum of
ten dollars per week.

"Be it further resolved that, as soon as any goods are billed, a duplicate
bill should be sent to Mr. Rosenberg, and that the secretary shall, under the
seal of the corporation, deliver to Mr. Rosenberg a certified copy of these
resolutions, setting forth the contract which the company has made in these
resolutions with Mr. Rosenberg, and Mr. Rosenberg, if he accepts same,
shall signify it by a writing to that effect on the minute book of the corpora-
tion. The contract embodied in these resolutions may be terminated by the
company at any time, upon paying Mr. Rosenberg in full for any and all
indebtedness the company owes him, and upon securing the release of his
liability for any indebtedness that he may have guaranteed for the company.
This arrangement may be terminated by Mr. Rosenberg upon 30 days' notice
to the company of his desire to terminate it."

There was no formal assignment of any of the book accounts. From
that time, however, the bills for goods sold were made in duplicate;
one being sent to the purchaser, as theretofore, and the other to Rosen-
berg. These purchasers, however, were not notified of any assignment
of their debts until a few days before the present bankruptcy proceed-
ings were instituted. In the meantime the bankrupt collected the ac-
counts, as theretofore, turning over some of the collections to Rosen-
berg to reimburse him for cash advanced and merchandise bought by
him for the bankrupt's use. The bankrupt's books of account contained
no reference to the alleged assignment, and they passed into the hands
of the receiver without any indication therein that the open accounts
appearing were not the property of the bankrupt. Subsequently the
receiver, learning of the passage of said resolution, and that Rosen-
berg had collected some of the accounts, and was endeavoring to col-
lect the remainder, filed the petition and obtained the rule to show
cause of February 8, 1916.

[1] *As to the referee's jurisdiction.* On behalf of the trustee, it is contended that this question was disposed of on review of the referee's order of April 7th. This, however, is not the case. Rosenberg's objection to the referee's jurisdiction, reserved in the agreement of February 11th and distinctly interposed in his said affidavit of March 1st, was undoubtedly overruled by the referee when or before he made the order of April 7th; and while such jurisdictional challenge may have been pressed upon this court when reviewing said order, yet that order did not deal with the question of adverse claimance, and its affirmance did not necessarily involve a consideration of that question. Rosenberg having at the outset unequivocally objected to the referee's jurisdiction, and never having expressly waived it, and the order now under review being the first made by the referee determining the ownership of said accounts, the jurisdictional question is still alive, unless Rosenberg's failure to renew such objection in his answer of May 7th, which went to the merits of the controversy, estops him from raising it now.

[2] In Re Kornit Mfg. Co. (D. C.) 192 Fed. 392, 395, 27 Am. Bankr. Rep. 244, 258, the writer said:

"It is elementary law that neither at law nor in equity can a challenge to the jurisdiction be joined with a defense to the merits. When this is done, the court will disregard the objection to the jurisdiction, and put the defendant to his defense."

That proposition has the support of Jones v. Andrews, 10 Wall. (77 U. S.) 327, 19 L. Ed. 935; but, as in the case of Re Kornit Mfg. Co. respondents were held not to be adverse claimants, that statement was obiter. In the present case the answer to the merits was not interposed until after the objection to the jurisdiction was overruled. In such circumstances pleading to the merits is not a waiver of the objections. Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; In re Indiana Transportation Co., Petitioner, 244 U. S. 456, 37 Sup. Ct. 717, 61 L. Ed. 1253; Foster Milburn Co. v. Chinn, 202 Fed. 175, 122 C. C. A. 577.

[3, 4] The receiver's standing to challenge Rosenberg's right to such book accounts was denied before the referee and is questioned here. At the time the receiver's said petition was filed an adjudication had been entered. The proceedings had therefore entered upon the second stage. They were no longer primarily concerned with the status of a person and whether he had committed an act of bankruptcy, but with the administration of a bankrupt's property. Adjudication having taken place, the receiver was no longer merely a custodian of property which might be ordered returned to the alleged bankrupt, but of property which was then in the course of administration. In addition to the duties devolving upon him as a preserver of property actually in his possession, he would be a proper person, pending the appointment of a trustee, to carry out any orders that the court might make for the enforcement of the provisions of the Bankruptcy Act under section 2, subd. 15. It would be his duty, as well as his privilege, to bring to the court's attention any matters which suggested the advisability of making such order.

His petition of February 8th was in line with his duty. It called for no other than summary action. The referee's order to show cause, with ad-interim restraint of the same date, was within his power, and in the absence of objection to his jurisdiction, and upon a proper showing, he would have been justified in making an order that the respondent turn over all the collections he had made on such book accounts, whether received before or after the institution of said bankruptcy proceedings. However, Rosenberg's objection called for a preliminary inquiry whether he was an adverse claimant within the meaning of section 23, and, if so, whether the res involved in that controversy was in the possession or control of the bankruptcy court. While the referee's rule covered collections made before the bankruptcy proceedings were begun, his order does not direct the return of such collections. As to those, Rosenberg's possession prevented them from becoming a part of the res which passed into custodia legis with the filing of the petition in bankruptcy. In the absence of consent or waiver, these collections could not be recovered by summary action, the only kind exercised in the proceedings under review. In re Rathman, 183 Fed. 913, 106 C. C. A. 253; 25 Am. Bankr. Rep. 246, and cases cited. The referee properly excluded such collections from the present order.

[5-7] *As to the uncollected accounts.* Whether the referee had summary jurisdiction to determine the right to the uncollected accounts depends upon whether they had become a part of the res, and that is to be determined as of February 2, 1916, the date when the pending bankruptcy proceedings were begun. These accounts appeared on the bankrupt's books of account as a part of its assets. Rosenberg had no possession of, or control over these accounts, other than could be derived from the resolution of December 7th, and his custody of one of the duplicate bills issued after said accounts were created.

Book accounts are but evidence of moneys due. They are choses in action, as distinguished from choses in possession. Bills are but copies of such accounts. An action on book account is one of the recognized remedies in New Jersey to recover the moneys due for goods sold and delivered, and books of account, properly proven, are prima facie evidence of the right to so recover. See 1 N. J. Dig. Ann., pp. 71, 72. The bankrupt's resolution of December 7th did not put Rosenberg in possession of any accounts. If valid, they gave him but the right to the moneys due or to become due on said accounts. This is so as to the accounts in existence at that time; a fortiori, as to those yet to be created.

It is to be noted that, while this resolution purports to assign the bankrupt's accounts, existing and to be created, to secure Rosenberg against loss for all past guaranties and future supplies of materials, yet it contemplated that they were to be collected by the bankrupt. Rosenberg was to be furnished with a duplicate bill of all sales made, but he was not authorized to make any collections. By this resolution, if valid, said accounts, though charged with a lien in favor of Rosenberg, continued in the possession of the bankrupt, and from the filing of the creditors' involuntary petition were in custodia legis, and on ad-

judication were subject to the summary jurisdiction of the bankruptcy court. The physical possession by the receiver of the books of account gave him at least constructive possession of the unpaid accounts therein recorded. He thereby obtained all the indicia of possession that usually accompany the transfer of property of that character from the bankrupt to the trustee.

The possession by Rosenberg of duplicate bills of such accounts before the institution of bankruptcy proceedings did not oust the bankrupt of its possession of, or control over, said accounts; and the institution of such proceedings gave him no greater rights in that respect. In such circumstances, whatever rights Rosenberg had in these accounts, followed them into the bankruptcy court, where, after adjudication, in case of dispute, such rights are to be litigated and determined. O'Dell v. Boyden (C. C. A. 6) 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239; 17 Am. Bankr. Rep. 756.

[8] The referee having jurisdiction to summarily determine the right to said uncollected accounts, what of his finding that those covered by said agreement of February 11, 1916, belong to the estate, and that the money collected thereon should be delivered to the trustee? There having been no adjudication in the first bankruptcy proceedings, there is no legal presumption that Gottlieb & Co. was insolvent, within the meaning of the bankruptcy law, at the time such proceedings were brought to an end. As noted, the composition called for payment of the entire indebtedness. That at that time the company was unable to meet its obligations as they matured will be presumed from said composition; but the composition does not prove that the aggregate of the company's property would not, at a fair valuation, be sufficient to pay its debts. That at the institution of the present bankruptcy proceedings, less than seven months after such composition, the company was hopelessly insolvent, is undoubted; but was it so on December 7th, when said resolution was passed? The testimony directly bearing on the fair value of the company's property as of that or an earlier date, while meager, yet, when taken in connection with the bankrupt's then financial difficulties and its hopeless insolvent condition very shortly thereafter, without any evidence of an intervening cause to account for the latter condition, tends to a mental pronouncement that it was insolvent on that date. The referee so found, and his finding has my concurrence.

[9] Did Rosenberg then know it? He bore a very close relationship to the bankrupt. He was a stockholder from the beginning, and at all times familiar with the company's business. This placed him in a different class from ordinary creditors. At the time of such composition the bankrupt was indebted to him in a large amount for merchandise sold to it and for his accommodation indorsements of its commercial paper. His opportunities to ascertain the exact financial condition of the bankrupt during its entire business career were unhampered, and the very largeness of his interest as a creditor would be likely to impel him, as it did, to become conversant with the company's financial needs on and after its resumption of business following the composition. The first payment of the bankrupt's old debts, under the composition, would be due in six months. In the meantime, while relieved of the

pressure of such payment, it would be in need of capital (money or credit) to carry on its business, out of the profits of which it expected to meet the terms of such composition. With knowledge of this, Rosenberg undertook to finance such business. This he did by furnishing to it from time to time the raw materials on his own credit and advancing cash to pay for labor as required.

Seemingly there never was a time after the company resumed business that Rosenberg would not have had reasonable cause to believe that an assignment or pledge to him of the company's book accounts would give him a larger percentage of its assets than other creditors. In November, because of the company's failure to pay for the advances made by him in October, Rosenberg became considerably concerned about the company's finances. Conferences and negotiations then took place, which resulted in the passage of the resolution of December 7th. If at no time before such conference Rosenberg was apprised of the financial condition of the company, he learned it then. The referee found he had knowledge of the company's insolvency at the time said resolution was passed, and I fully agree with him in that conclusion.

[10] Does such knowledge disentitle him to the moneys realized from the book accounts in question? They were intended to secure him, not merely for antecedent debts, but also for advances afterwards to be made, and because of this fact Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339, 31 Am. Bankr. Rep. 407, is relied upon to sustain the contention that said security was valid and that the referee's order should be reversed. The present case, however, is radically different, because, first, in the Dockendorff Case the assignee of the book accounts did not know that the debtor was insolvent; and, second, though advances were made by Rosenberg in cash and goods after the passage of the resolution, the aggregate of the collections paid to Rosenberg from the bankrupt's book accounts and the value of merchandise returned to him or to others for his benefit, between the date of the passage of the resolution and the institution of the bankruptcy proceedings, exceeded the aggregate of the cash and merchandise furnished by him during said period.

National City Bank v. Hotchkiss, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115, 31 Am. Bankr. Rep. 291, distinguished in the Dockendorff Case, is more in point on the question of knowledge of insolvency. The fact that under such security Rosenberg received more than the advances made takes it without the Dockendorff Case, and bars his right to the accounts now under consideration.

The order under review is affirmed.