### In re LOOSCHEN PIANO CASE CO.

#### (District Court, D. New Jersey. August 2, 1919.)

**1. BANKRUPTCY ⊜165(1)—PROPERTY PASSING TO TRUSTEE—BANK CREDIT.**

A bank balance appearing to the credit of a bankrupt, by reason of the crediting of certain checks then held by and belonging to the bank under a prior agreement for their application on a note of bankrupt, and which were afterward so applied and charged back, *held* not recoverable by the trustee, in the absence of evidence making the transaction one of voidable preference.

**2. BANKRUPTCY ⊜166(4)—VOIDABLE PREFERENCE—EVIDENCE.**

The facts constituting reasonable cause for believing a preference was intended by a debtor must include the element of insolvency.

In Bankruptcy. In the matter of the Looschen Piano Case Company, bankrupt. On review of referee's order requiring the Ironbound Trust Company to turn over to the trustee $976.40. Reversed.

Pitney, Hardin & Skinner, of Newark, N. J., for Ironbound Trust Co.

Horton & Tilt, of Paterson, N. J., for trustee.

RELLSTAB, District Judge. The referee made an order that the Ironbound Trust Company pay to the trustee in bankruptcy the sum of $976.40, and the trust company has brought the order here for review.

[1] The record shows that the Looschen Piano Case Company, a corporation (hereinafter called the Looschen Company), was adjudicated a bankrupt on March 1, 1917. It had been a depositor of the trust company for several years, during which it had sold to the trust company divers promissory notes. Some of these notes were its own paper and others (hereinafter called trade paper) were obtained by it

from its customers. About two years before the bankruptcy proceedings were begun, several of the Looschen Company's customers, whose trade paper had been purchased from it by the trust company, failed. The Looschen Company, not being able to take care of such paper, entered into an agreement with the trust company to substitute its own notes for such trade paper, and to give the trust company 10 per cent. of the proceeds of any other trade paper thereafter sold to it, to be applied to the payment of its (Looschen Company's) notes. This agreement was in force at the time of the adjudication. Its performance took place in the following manner:

Whenever the Looschen Company's trade paper was purchased by the trust company, the entire proceeds, less the usual discount, were placed to the credit of the Looschen Company in its deposit account with the trust company. It forthwith gave the trust company its check, drawn on such account, for 10 per cent. of the proceeds. The checks were immediately charged against the Looschen Company's account, and held by the trust company as cash, until the due date of the Looschen Company's note then next to mature, at which time the aggregate amount of the checks was credited and debited to the Looschen Company's account, and applied in reduction of such note, and a renewal note taken for the remainder. Why the checks, having once been charged singly against the account, should be charged again in the aggregate, is not clear; but it is manifest that, if they were to be twice charged, it would be necessary to credit them, if the account was to be true.

This was the course pursued by the trust company in reference to such checks up to the adjudication. At that time the trust company held the Looschen Company's unapplied checks, charged singly against its deposit account, aggregating $1,074, and representing 10 per cent. of the amount of trade paper bought under such agreement since the last one of the Looschen Company's matured notes had become due, and which checks had accumulated since the last batch of like checks had been credited on one of its notes. These checks were held, awaiting the maturity of the Looschen Company's note in the sum of $2,300, payable April 23, 1917, then held by the trust company. At the same time (adjudication) the Looschen Company's account showed an overdraft of $97.60.

The trust company did not learn of the bankruptcy proceedings until March 9th. On that date, acting on the assumption that bankruptcy accelerated the maturity of commercial paper, and that the $2,300 note was then due, it credited the Looschen Company's account with the sum of $1,074, the aggregate of the checks so held, and applied the difference between that sum and $97.60 (the amount of the overdraft), viz. $976.40, to said note, but did not debit said account with that amount until April 23d, when that note fell due according to its terms. On April 9, 1917, the assistant treasurer of the trust company, complying with a request of the trustee in bankruptcy, furnished him with a statement of the Looschen Company's account, covering the period from January 1st to April 9th of that year. This statement, because of the failure to debit the Looschen Company's

account with the aggregate amount of the checks referred to, showed a balance in favor of the bankrupt of the sum of $976.40. If the practice theretofore followed had been pursued on March 9th, when the credit of $1,074 was made, and the aggregate of these checks had been debited, as well as credited, the account, instead of showing a balance in favor of the depositor, would have shown the same overdraft of $97.60.

As stated in his petition to the referee, the trustee's reason for claiming this sum of $976.40 is that the bankrupt's account with the trust company on March 9th showed such balance. The referee apparently considered the transcript of this account, furnished by the trust company, as controlling. True, on March 9th, the account showed that the bankrupt had a balance to its credit of $976.40; but that, for the reasons stated, was not correct. The sum represented by the checks, the deposit of which to the credit of the bankrupt produced this fictitious balance, did not belong to the bankrupt, but to the trust company, and the entry thereof on that date on the credit side of the account did not, in the circumstances, operate as a transfer of such money to the bankrupt. The aggregate amount of these checks was credited, as similar checks given for a like purpose had been previously credited, preparatory to being applied on the bankrupt's note, and, as noted, the sum so credited to the account was at the same time applied on the $2,300 note.

Why, with such crediting and application, the bankrupt's account was not immediately debited with the sum so applied, is singular to one not specially conversant with the banking business, but not any more so than the practice theretofore followed of crediting and debiting the account with the amount already debited each time that an application of the aggregate of these 10 per cent. checks was made to a matured note. This debiting did take place, but, as stated, not until April 23d, when the note fell due. Belated as this debit was, it was properly made. Under the agreement, these checks, when given by the Looschen Company, became the property of the trust company, to be devoted to a specific purpose, and they were treated by the Looschen Company as payments on account of the note held by the trust company that was next to mature. That the trust company's system of bookkeeping provided for crediting and redebiting such checks at the time when the aggregate amount thereof was actually applied in no way increased the amount of such deposit account. The aggregate amount of these checks, under the agreement referred to, being the property of the trust company, it cannot be recovered by the trustee, unless the bankrupt was insolvent at the times they were given, and the trust company then had reasonable cause to believe that they would give it a preference.

[2] A solvent debtor has the right to prefer a creditor. It follows, therefore, that the facts constituting "reasonable cause," from which a potent belief is to be imputed to the creditor, must include the element of insolvency. Heyman v. Third Nat. Bank of Jersey City, (D. C. N. J.) 216 Fed. 685, 688, and cases cited. The record does not disclose whether the Looschen Company was insolvent at the

time or times when these checks were given. It was adjudicated a bankrupt on its admission of insolvency and willingness to be adjudicated a bankrupt; but such admission and adjudication speak only as of the time when made, and are not available to prove insolvency at an earlier period. The degree of proof required, of course, will vary according to the circumstances. Gottlieb & Co., Matter of (D. C. N. J.) 245 Fed. 139, 40 Am. Bankr. Rep. 247, affirmed Rosenberg v. Semple (C. C. A. 3) 257 Fed. 72, —— C. C. A. ——; In re Star Spring Bed Co. (D. C. N. J.) 257 Fed. 176, 43 Am. Bankr. Rep. 328. But some evidence tending to establish insolvency at the time the alleged preference is given is necessary. Furthermore, even if it could be held that the Looschen Company was insolvent at the times of giving these checks, there is nothing in this record that would justify the conclusion that the trust company at any such times had reasonable cause to believe that in accepting them it would obtain a preference.

The transcript of the bank account introduced in evidence shows that for the period covered by it (four months preceding the filing of the petition in bankruptcy) the Looschen Company overdrew its account a number of times; but these overdrafts, except those occurring some time after the last of the 10 per cent. checks was given, were always made good. These overdrafts and the Looschen Company's need of an advance to meet its pay roll of February 17th, at which time the trust company permitted it to check out $750 more than the account warranted, indicate that the depositor, to the knowledge of the trust company, was frequently short of ready money, and if these checks represented simply payments on account of an old debt they might suggest that the trust company, at the times it received the checks, was chargeable with the duty of making inquiry concerning the solvency of its debtor. But these checks were not ordinary payments; as noted, they represented 10 per cent. of new or additional credits which the trust company was extending its debtor, and it is not at all likely that the trust company would have increased its loans to this debtor to nine times the amount of such checks, if it believed that the borrower was insolvent, or even doubted its solvency.

In Tilt v. Citizens' Trust Co. (D. C. N. J.) 191 Fed. 441, affirmed 200 Fed. 410, 118 C. C. A. 562, mainly relied upon by the trustee on this branch of the case, there was ample evidence showing the insolvency of the bankrupt at the time of the transfers, and that the creditor at that time had reasonable cause to believe that they would effect a preference. In both respects, as I have said, the instant case differs.

Having reached this conclusion, it is unnecessary to consider the question whether the trust company had a right to set off the sum of $976.40 against the amount due it on the bankrupt's notes. The right to apply this sum on the note mentioned, as herein determined, is based on its being the trust company's property—special property for the purpose of such application. If it was its property, the question of the right of set-off is not pertinent. If, however, such sum was not the property of the trust company, but a balance belonging to the

Looschen Company, then the law of set-off, adopted by section 68 of the Bankruptcy Act, is applicable, and such balance was properly applied in reduction of the trust company's claim against the bankrupt estate, as there is not even a suggestion in the record that the checks, the crediting of which made such balance, were obtained with the view of being used as a set-off, or with knowledge or notice that the giver thereof was insolvent. See Heyman v. Third Nat. Bank of Jersey City, supra, 216 Fed. 687, and cases there cited.

The referee's order under review is reversed.