BRITTON v. UNION INV. CO. *

In re P. B. MANN–ANCHOR CO.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1919.)

No. 5289.

1. BANKRUPTCY ☞161(1), 188(3), 311(5)—LENDER SECURED BY INVALID WARE-
HOUSE RECEIPTS ENTITLED TO EQUITABLE LIEN ; PAYMENT OF EQUITABLE LIEN
NOT PREFERENCE, WHERE BASIS OF LIEN MORE THAN FOUR MONTHS PRIOR TO
BANKRUPTCY.
    As against the trustee in bankruptcy, who stands in no better position
than the bankrupt, one who made loans to bankrupt, secured by instru-
ments representing the grain handled by it, which more than four months
before the adjudication were replaced by one receipt, covering grain in
various elevators in several states, that did not comply with the state
laws governing warehouse receipts, was entitled to an equitable lien ;
so that, even if the contract was unenforceable, the grain having with con-
sent of the parties been sold and the proceeds turned over to the credi-
tor before the bankruptcy proceedings were initiated, thus making the
pledge effective by possession, the situation will not be disturbed, and
the creditor need not, as a condition to allowance of its claim for bal-
ance due, return the money thus received.

2. BANKRUPTCY ☞161(1)—PAYMENT RELATES TO TIME OF SECURITY AGREE-
MENT AS REGARDS PREFERENCE.
    Sale of property of bankrupt on which a creditor had an equitable lien,
and payment of the proceeds to the creditor, though within four months
of bankruptcy, for preference purposes relate back to the date of the con-
tract which they were designed to and did fulfill.

3. BANKRUPTCY ☞340—BURDEN OF PROOF AS TO PREFERENCE ON TRUSTEE.
    Even if, to prevent a preference, there should be absolute identity be-
tween grain in bankrupt's elevators pledged and that of the same kind,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 251 U. S. ——, 40 Sup. Ct. 346, 64 L. Ed. ——.

quantity, and quality which was sold, with payment of the proceeds to the secured creditor, the trustee had the burden of showing absence of identity.

**4. BANKRUPTCY ⊜⇒164—IDENTITY OF PROCEEDS OF PLEDGED PROPERTY AND MONEY PAID PLEDGEE NOT NECESSARY TO PREVENT PREFERENCE.**

No preference can be predicated on the fact that the money received from sale of grain pledged by bankrupt was not kept physically isolated till paid to the secured creditor, but was deposited in bank with other money of bankrupt, and a check for the amount immediately given to the creditor.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

In the matter of the P. B. Mann-Anchor Company, bankrupt. Order of the referee, holding that certain payments to the Union Investment Company, a creditor, constituted a preference, and that it was not entitled to allowance of its claim till the money so paid was returned, was reversed by the District Court, and Walter F. Britton, trustee in bankruptcy, appeals. Affirmed.

Todd, Fosnes, Sterling & Nelson, of St. Paul, Minn., for appellant.

Lancaster & Simpson and R. G. Patton, all of Minneapolis, Minn., for appellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Appeal from decree of District Court, on petition for review, reversing order of referee in bankruptcy which declared certain payments to appellee to be preferences.

[1, 2] The undisputed facts are that the bankrupt, a grain firm owning a line of elevators, had for some time been borrowing from appellee. These loans were secured by various instruments supposed to represent the grain handled by appellee, such as bills of lading and receipts. More than four months before the bankruptcy adjudication these receipts had been replaced by one receipt covering grain in various elevators in several states. The present controversy revolves around the proceeds of grain covered by this receipt, which grain was sold by a creditors' committee and the proceeds turned over to appellee before, but within four months of, the bankruptcy proceedings. It is admitted that this receipt did not comply with the state laws governing warehouse receipts; therefore no reliance is placed upon it as a warehouse receipt. Appellee's contention is that its course of dealing in connection with its loans, made upon the faith of the receipts replaced by this last one, coupled with the later reduction and realization upon the pledged property before the bankruptcy proceedings began, established its right to an equitable lien on the grain covered thereby. This position is sound, as against a trustee in bankruptcy, who stands in no better position to avoid an equitable claim of this character under these circumstances than the bankrupt itself.

The parties to this transaction, with no thought of forbidden preference, intended that the grain covered by the receipts should be a security for the debt. They sought to impound it for that purpose through the instrument delivered. Upon the faith of this security

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

loans were procured from appellee. As said by Mr. Justice Holmes, in the case of Sexton v. Kessler, 225 U. S. 90, 96, 32 Sup. Ct. 657, 658 (56 L. Ed. 995):

"So far as the interpretation of the transaction is concerned it seems to us that there is only one fair way to deal with it. The parties were business men acting without lawyers and in good faith attempting to create a present security out of specified bonds and stocks. Their conduct should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result. * * * So the question is whether anything in the situation of fact or the rights reserved prevents the intended creation of a right in rem, or at least one that is to be preferred to the claim of the trustee. The bankruptcy law by itself does not avoid the transaction."

The so-called receipt is no receipt, because it fails to comply with the requirements of the state statutes governing grain warehouse receipts, and it would form no barrier to a proper receipt covering the same grain issued to an innocent person. But it is a part of the evidence of the actual understanding and arrangement between the parties. The grain was, with the consent of appellee and the bankrupt, sold by the committee, and the resulting funds turned over to it by the committee, to be applied to its debt under the above contract. In essence such transactions amount to a reduction to possession of the grain, and a realization thereon by it. This entire transaction was fully consummated before the bankruptcy proceedings were initiated. Although they took place within four months of bankruptcy, yet, for preference purposes, they relate back to the date of the contract which they were designed to and did fulfill. Security Warehousing Co. v. Hand, 206 U. S. 415, 423, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789. Even if the contract were unenforceable, which we do not decide, as contended for by appellant, because the receipt failed to conform to the state laws governing grain warehouse receipts, yet it was not inherently vicious, was made and carried out in good faith, and had been fully performed before the bankruptcy proceedings began. Equity will not disturb such a situation. The saving element here, which prevents application of the state statutes invoked by appellant, is that possession of the pledge became effective through possession of the money for which the same was sold by consent of pledgor and pledgee, with the knowledge that such disposition was to be made of the money.

[3, 4] Appellant contends that the identity of the grain pledged was not preserved nor proven. Because of the character of grain, it is rare that receipts, pledges, or contracts with warehousemen regarding it, attempt to segregate the particular grain. The needs of all parties are usually met by description of the warehouse, or receptacle therein, the kind, quantity, and quality of grain. The contract here was of this character. The evidence establishes that the grain sold by the committee met the description of this pledge. There is no testimony showing that it was not the identical grain, if absolute identity be required. Nor is it material that the money received for this grain was not kept physically isolated until paid to appellee. It was deposit-

262 F.—8

ed in a bank with other money, and promptly checked out to appellee, so there is no question that the identical amount received for this grain was in the bank and paid the check.

The judgment of the District Court is affirmed.