## In re SMITH–FLYNN COMMISSION CO.

### LIVE STOCK STATE BANK v. DOYLE (two cases).

(Circuit Court of Appeals, Eighth Circuit.   August 22, 1923.)

Nos. 235, 6309.

**1. Bankruptcy ☞440—Order held reviewable by appeal; "controversy arising in bankruptcy."**

A petition to establish a lien on property of bankrupt in possession of his trustee, and to require delivery of the property to claimant, presents a "controversy arising in the bankruptcy proceeding," and the decision thereon is reviewable by appeal, rather than petition to revise, under Bankruptcy Act, § 24a (Comp. St. § 9608).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy arising in bankruptcy proceedings.]

**2. Bankruptcy ☞324—Interest on claim allowable only to time of filing petition.**

Interest on a provable claim is limited to what would have been recoverable at the time of filing the petition in bankruptcy.

**3. Bankruptcy ☞188(1)—"Pledge" by president held valid.**

Where the president of a corporation, who was apparently in full control of its affairs, deposited a certificate of membership in an exchange, owned by the corporation, with a bank, where it remained for two years as security for loans and overdrafts made by the corporation, the pledge *held* valid and effective as against the corporation and its trustee in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pledge.]

**4. Exchanges ☞7—Formal written assignment not essential to create "pledge" of membership certificate.**

Delivery of a certificate of membership in an exchange to a bank as security *held* to create a valid pledge, though there was no formal assignment of the certificate.

**5. Exchanges ☞7—Rule of exchange held not to invalidate pledge of certificate of membership.**

A rule of an exchange requiring its consent to a transfer of membership *held* not to affect the validity of a pledge of a certificate of membership as against the pledgor.

**6. Pledges ☞25—Lien of pledgee not lost by delivery of property to pledgor for temporary purpose.**

While possession by the pledgee is essential to the validity of a pledge, delivery of the property to the pledgor for a temporary purpose does not divest the lien of the pledgee, except as to a bona fide purchaser from the pledgor while so in possession.

**7. Equity ☞7—Relief granted from mutual mistake of law.**

Equity will grant relief where there is a mutual mistake, even though the mistake be one of law.

**8. Pledges ☞25—Creditors held not to have acquired intervening rights which prevented reinstatement of pledge.**

That bankrupt corporation incurred debts after the return to it of a pledge, through mutual mistake *held* not to prevent reinstatement of the pledge, where it did not appear that any of the creditors had knowledge of the pledged property.

**9. Bankruptcy ☞151—Trustee takes only rights of bankrupt, unless creditors have acquired liens by legal or equitable proceedings.**

The provision of Bankruptcy Act, § 47a (2), as amended (Comp. St. § 9631), vesting a trustee with "all the rights, remedies, and powers of a

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

292 F.—30

creditor holding a lien by legal or equitable proceedings," does not increase the rights of the trustee as to property on which none of the creditors had acquired a lien by legal or equitable proceedings.

**10. Bankruptcy ⬤➡188(1)—Creditor which surrendered pledged security through mistake held entitled to reinstatement of its lien.**

A creditor, which on payment of its debt surrendered pledged security to bankrupt, which passed to its trustee, on the subsequent recovery by the trustee of part of such payment, *held* entitled to reinstatement of its lien on the pledged property or its proceeds.

Petition to Revise Order of and Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

In the matter of the Smith-Flynn Commission Company, bankrupt; Timothy J. Doyle, trustee. The Live Stock State Bank petitions to revise and appeals from an order of the District Court. Petition to revise dismissed, and order reversed on appeal.

John P. Kyle, of St. Paul, Minn., for petitioner and appellant.
John A. Burns, of St. Paul, Minn., for respondent and appellee.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. This case is before us on appeal and also on petition to revise. Out of an abundance of caution in these bankruptcy matters, practically all of the cases are similarly presented. Each case, as to the proper procedure for review, must depend on its own record. Appeal is a substantial right, and the parties should not be deprived thereof, unless the law is clear. On an appeal the court can consider both questions of law and fact; on petition to revise, only questions of law. The line of demarcation between the right to appeal and the proceeding known as petition to revise is at times almost invisible, and many cases are what might be termed border line ones.

[1] The relief here sought is to establish a lien on property in possession of the trustee in bankruptcy and require him to deliver the same to claimant. It is a suit between the trustee and the claimant concerning the right to certain property of the bankrupt's estate. This presents a controversy arising in bankruptcy proceeding, and the proper procedure is appeal under section 24a of the Bankruptcy Act (Comp. St. § 9608). It would be futile to review the cases on this subject. Their number is legion. We refer, however, to some authorities and text-writers as supporting the position we here take. Collier on Bankruptcy (11th Ed.) 576, states:

"Confusion may be avoided by bearing in mind that under section 24a a controversy arising between a trustee and a third party, in respect to property either in possession of the trustee or a third party, the review in the Circuit Court of Appeals is had on appeal in the same manner as in other cases. In the case of such controversies the revisory power is not available."

In Dodge v. Norlin, 133 Fed. 363, 365, 66 C. C. A. 425, 427, this court said:

"Section 25a vests the Circuit Court of Appeals with appellate jurisdiction of controversies arising in bankruptcy proceedings of which they have juris-

diction in other cases. As this court has appellate jurisdiction of this controversy in other cases in which it might be presented in a federal court, it has such jurisdiction when it arises in proceedings in bankruptcy."

In the same case it was held that there was nothing in the provisions of section 25a (Comp. St. § 9609) which excludes, revokes, or diminishes the general appellate jurisdiction granted by the previous section over controversies within the jurisdiction of the Circuit Courts of Appeals before the Bankruptcy Law was passed, and that the effect of section 25a was to grant additional jurisdiction and restrict the time within which appeals could be taken in the three classes there designated.

In Re Holmes, 142 Fed. 391, 73 C. C. A. 491, this court said:

"This is a controversy over the title and property of the estate of the bankrupt between the trustee and the mortgagee, a party adverse to the trustee and the bankrupt, of which this court is given appellate jurisdiction by Bankruptcy Act July 1, 1898, c. 541, § 24a, 30 Stat. 553, U. S. Comp. St. 1901, pp. 3431, 3432."

And again (142 Fed. on page 394, 73 C. C. A. 494), the court said:

"The order challenged in this case involved the right of the creditor under a chattel mortgage to certain property of the bankrupt, or its proceeds, which had been taken by the trustee. It was therefore an appealable order."

The same doctrine will be found in Loveland on Bankruptcy, § 826; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; In re B. & R. Glove Corporation (C. C. A.) 279 Fed. 372; Tennessee Finance Co. v. Thompson (C. C. A.) 278 Fed. 597; Petition of National Discount Co. (C. C. A.) 272 Fed. 571; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610; Rode & Horn v. Phipps, 195 Fed. 414, 115 C. C. A. 316.

Some of the authorities that might be considered as taking a contrary view are O'Neal v. Stuart (C. C. A.) 281 Fed. 715, where the court held that an order denying petitioner a lien was reviewable by petition to revise, but said the record presented a case which was near the line between review by petition to revise and appeal; also Marion Mach. Foundry & Supply Co. v. Girand et al. (C. C. A.) 285 Fed. 160; In re Whitener, 105 Fed. 180, 44 C. C. A. 434; In re Rouse, Hazard & Co., 91 Fed. 96, 33 C. C. A. 356; Hutchinson v. Otis, 190 U. S. 522, 23 Sup. Ct. 778, 47 L. Ed. 1179; O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239.

We are convinced that in the present case the proper remedy is appeal. The petition to revise is therefore dismissed.

Without entering into elaborate detail as to facts, it may be briefly stated that the Smith-Flynn Commission Company was organized as a corporation June 14, 1913, under the name of the Oehler-Forsythe Company. November 19, 1918, the name was changed to the Smith-Forsythe Company, and on June 19, 1920, to the Smith-Flynn Commission Company. We will hereafter refer to it as the Commission Company. At the time of the first transaction with petitioner, Forsythe seems to have been in entire control and management of the company. The company was the owner of a certificate of membership in the South St. Paul Live Stock Exchange, and this certificate was

deposited some time during the year 1918 with appellant as collateral security for loans or overdrafts. No corporate action was taken as to the assignment of said certificate. The Commission Company continued to have a checking account with appellant. At the time of the change in the company's name the certificate of the Live Stock Exchange was delivered temporarily by the bank to some officer of the Commission Company, and later redelivered to the bank. December 23, 1920, the Commission Company was indebted to the bank in the sum of $16,503.99. The Commission Company had on deposit in the bank, subject to check at that time, more than sufficient to pay this indebtedness, and the bank applied said deposits in payment of the indebtedness, and, having done this, delivered the certificate to the Commission Company, and the same was held by the Commission Company until the appointment of a trustee in bankruptcy of said company.

Immediately prior to the offset made by the bank there was presented to the bank in the regular course of business two checks, aggregating $4,723.09, which the bank refused to honor. April 2, 1921, the Commission Company was adjudicated a bankrupt, and Timothy J. Doyle was duly elected trustee, and took possession of the property of the bankrupt, including the certificate in question. The trustee then brought an action against appellant to recover the sum represented by the two checks, and secured judgment in the amount of $4,723.09, which represented the amount of the checks the bank had refused to honor when it had funds of the Commission Company in its hands and subject to check. Petitioner thereupon paid said judgment and filed claim against the bankrupt estate for the sum of $4,723.09 so paid, and demanded possession of the certificate, or that the same be sold and the proceeds thereof applied on the amount of the judgment. Upon this state of facts the referee made findings, and the trial court approved his findings, establishing the claim of appellant in the sum of $4,337.69, and rejecting its claim to the said certificate, or to the proceeds thereof, except as it might participate as a general creditor of said bankrupt.

[2] There was no error in the court's finding as to the question of interest. The statute itself settles this. The provable debt was limited to principal and the interest that would have been recoverable at the date of the filing of the petition in bankruptcy. Bankruptcy Act, § 63a (1), being Comp. St. § 9647. See, also, In re Chandler, 184 Fed. 887, 107 C. C. A. 209.

The other question in the case is more important and more difficult. Appellant claims that the District Court erred in not recognizing that it had a valid lien under a claimed assignment upon the certificate of membership in the South St. Paul Live Stock Exchange held by it up to the time that the debt was supposed to be paid, and that the District Court erred in not reinstating its lien upon said certificate of membership, or the proceeds thereof, when a part of the debt of the bankrupt to petitioner was reinstated; appellant contending that no intervening liens had accrued against the certificate, and no rights of any kind had intervened, except those of general creditors as represented by the trustee. To the consideration of this question we therefore address ourselves.

[3] Appellee challenges the alleged assignment of the membership certificate on the ground that there was no action of the board of directors authorizing the pledging of said certificate, that no assignment was in fact made, and further that there was a rule of the Live Stock Exchange requiring it to consent to a transfer of a membership certificate. It is unquestioned that there was no written assignment of the certificate. It was delivered to the bank originally by Forsythe, president of the company, and he was apparently in complete control of the corporation at that time. There was no action of any board of directors; the record not disclosing that there was any such board, Forsythe's wife seeming to be the only other person having an interest in said business. The certificate remained with the bank, except when it was temporarily given up in June, 1920, for a few days, at the time of the change in the name of the Commission Company, until the 23d of December, 1920. During that time the Commission Company was borrowing money from the bank. When Flynn came into the company in June, 1920, it is apparent that he knew the bank held this certificate as collateral.

The referee finds that Smith, who later came into the company and became the president of it, did not know the bank had the certificate until the same was returned to the company. We do not regard this of great importance, although we think the referee manifestly erred in such finding. Smith had been connected with the company in various capacities for a period of two years, holding at different times the positions of secretary, treasurer, director, and president, and during all of that time the certificate was in the hands of the bank, except when temporarily surrendered as before explained. It is difficult to believe that a person, holding the important positions which he did with the company, could for a period of two years remain ignorant of a certificate of this character being in the hands of a bank as collateral security. For two years the Commission Company permitted this certificate to remain with the bank, and even if no board of directors had authorized it, as against an innocent party, advancing money on the strength of it, or partially so, neither the Commission Company nor the trustee in bankruptcy would be in position to question the authority of the corporation to make the assignment. In G. V. B. Min. Co. v. First Nat. Bank of Hailey, 95 Fed. 23, 30, 36 C. C. A. 633, 639, the court said:

"Where the president of a corporation is given full power and authority to conduct and manage its business, and deal with the property and affairs of the corporation in such a manner, and for such a length of time, as to justify others with whom he transacts business in believing that he had authority to do the acts in the manner and way performed by him, the people with whom he transacts business have the right to deal with him upon the assumption that he has such authority; and the corporation, having knowledge of the exercise of such acts, and of the manner in which the corporate business was transacted, cannot thereafter, to the injury and prejudice of such parties, deny his authority, or disaffirm or set aside his acts."

The principle so announced is eminently sound and sustained by a multitude of authorities.

Galbraith v. First Nat. Bank of Alexandria, Minn., 221 Fed. 386, 137 C. C. A. 194, is a case in which the president of a corporation and

his wife, without authority from the board of directors, and without their knowledge, executed a mortgage, which they acknowledged as president and secretary, to a bank, which was told and believed that the wife was secretary. It was held that the mortgage was good and there was an estoppel against questioning the president's authority under the circumstances. See, also, Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846.

In the case at bar, none of the stockholders of the company ever objected to the transfer of the certificate to the bank. The long period of time which elapsed during which the Commission Company was borrowing from the bank and using the money for the benefit of the company may well, as a matter of law, be held to amount to acquiescence on the part of the company to the transaction. We think there is no force to the contention that the assignment was invalid, as made without authority of the corporation.

[4] It is admitted that there was no formal assignment in writing of the certificate. A formal written assignment is not essential to create a pledge. To constitute a valid pledge there must be a delivery of the property, either actual or constructive to the pledgee, or pledge holder. 21 R. C. L. p. 642. In respect to most kinds of property a delivery of the property to the pledgee without any written transfer is sufficient. 21 R. C. L. p. 648. The business world recognizes transactions carried on upon the theory that property may be pledged by delivering it, either actually or symbolically, without written assignment, such as the delivery of certificates of stock, seats on stock exchanges, delivery of policies of fire insurance, pledges of choses in action, delivery of passbooks on a savings bank, and other instances which the courts have sustained as valid pledges. Boynton v. Payrow, 67 Me. 587; Stout v. Yaeger Milling Co. (C. C.) 13 Fed. 802; Barnes v. Davis, 113 Minn. 132, 128 N. W. 1118; Dickey v. Pocomoke City Nat. Bank, 89 Md. 280, 43 Atl. 33; Jones v. Coates, 196 Fed. 860, 160 C. C. A. 422; 21 R. C. L. 644, 645; Dale v. Pattison, 234 U. S. 399, 34 Sup. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. (N. S.) 754.

In Hurley v. Atchison, T. & S. F. Ry. Co., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729, the Supreme Court held that an advance payment for coal yet to be mined may evidence a pledge of the coal without any formal conveyance or transfer, and that the trustee in bankruptcy takes the mine subject to the obligation of the pledge. See, also, decision of this court, Britton v. Union Inv. Co., 262 Fed. 111.

In re Hub Carpet Co. (C. C. A.) 282 Fed. 12, held that, under an agreement to assign accounts due and to become due as collateral security for loans, a list of accounts sent the creditor, with a statement that it was a list of the accounts assigned to him in accordance with the agreement, was equivalent to the taking of possession in the case of a chattel, or to the recording of a mortgage, and gave the creditor title to and possession of the accounts as against a trustee in bankruptcy.

[5] The fact that the Live Stock Exchange had a rule requiring its consent to a transfer of the membership was not fatal to a pledge of the certificate of membership. It does not in any event prohibit

pledges. The rule is for the benefit of the exchange, and could not be raised by the trustee to defeat the rights of appellant. Westerlund v. Black Bear Mining Co., 203 Fed. 599, 121 C. C. A. 627; St. Louis, Vandalia & Terre Haute Railroad Co. v. Terre Haute & Indianapolis R. R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748.

We have no question that the certificate represented a property right, was assignable, was assigned, and was legally in the hands of appellant as collateral security for loans or overdrafts (O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239); that as against the Commission Company appellant could have held the certificate as a pledge and security, and forced the sale thereof by proper procedure, if necessary, and credited the proceeds thereof upon the indebtedness.

[6] Appellee claims that appellant lost its lien when it gave up the possession of the certificate, and that a pledge cannot exist unless there likewise be possession. It is, of course, well-established law, as heretofore referred to, that a pledge cannot exist without possession. Either the pledgee must have the possession or some third person for his benefit. No one would have the temerity to claim otherwise. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; also Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117; Fidelity Insurance, Trust & Safe-Deposit Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 439, 445; French v. White, 78 Vt. 89, 62 Atl. 35, 2 L. R. A. (N. S.) 804; Third National Bank of Buffalo v. Buffalo German Ins. Co., 193 U. S. 581, 24 Sup. Ct. 524, 48 L. Ed. 801; Mahoney v. Hale, 66 Minn. 463, 69 N. W. 334.

It has been held by the courts of Minnesota and other states that, while possession of the pledgee is essential to a valid pledge, and the lien of a pledgee is lost by surrender of possession, the delivery of said pledged property for a temporary purpose does not divest the pledgee's lien, except as to bona fide purchasers from the pledgor while he is in temporary possession. Clark v. Corser (Minn.) 191 N. W. 917; Fidelity Ins., etc., Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 439, 445.

[7] In this case the certificate of the Live Stock Exchange was in the hands of appellant until returned to the bankrupt under the mistaken idea that the debt of the bankrupt to it had been paid. Did the surrender of the certificate by appellant to the Commission Company under a mistake end the pledge? It was a mutual mistake. The Commission Company supposed its debt to the bank was paid, and so did the bank. The rule as to mistake is nowhere more clearly stated than in the case of In re Swift (D. C.) 111 Fed. 503, 506, as follows:

"That ignorance of the law excuses no one is not a maxim of universal application. Against some mistakes of law a court of bankruptcy will relieve. Actual knowledge that bankruptcy proceedings were pending, and constructive knowledge of their date, of all the language of the act, and of the correct interpretation thereof, will not turn an otherwise innocent mistake of law into a guilty one. Again, Wilcox knew that the trustee claimed to recover from Post & Flagg; but, as he also believed that his own attachment was valid, he was under a mistake of law or of fact. That the mistake was unreasonable, that he ought to have known better, even if true, does not appear to me material, so long as he acted in good faith, as the agreed facts declare."

In Griswold v. Hazard, 141 U. S. 260, 284, 11 Sup. Ct. 972, 979 (35 L. Ed. 678), the court dealt with a mutual mistake as to the legal effect of an instrument, and held it inequitable for parties to take advantage of such mistake, and said:

"While it is laid down that 'a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts,' yet 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best-considered and best-reasoned cases upon this point, both English and American.' "

In Phillipine Sugar, etc., Co. v. Phil. Islands, 247 U. S. 385, 389, 38 Sup. Ct. 513, 514 (62 L. Ed. 1177), the court said:

"It is well settled that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties. The fact that interpretation or construction of a contract presents a question of law, and that, therefore, the mistake was one of law, is not a bar to granting relief."

It is clear from these discussions that courts of equity will grant relief where there is mutual mistake, even if the mistake be one of law. See also Hunt v. Rousmanier's Adm'r, 8 Wheat. 174, 5 L. Ed. 589; Snell v. Insurance Co., 98 U. S. 85, 25 L. Ed. 52.

Hutchinson v. Otis, 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179, in its facts, is quite like the case at bar. There the firm of Otis, Wilcox & Co. sued the bankrupts in New York and Illinois and attached debts due to them. It was within four months before the filing of the petition in bankruptcy, and therefore ineffectual under section 67 of the act (Comp. St. § 9651). They supposed they had valid attachments, and took judgments by default and collected their debt. Satisfaction was entered of record in each suit. Subsequently the trustee in bankruptcy demanded payment of them, and they paid over to the trustee the full amount of their debts. A petition was filed by them, asserting a lien on the proceeds of a seat in the New York Stock Exchange which formerly belonged to the bankrupts. Their lien had not been insisted on, because they thought they had been paid. The court says:

"No one having changed his position on the faith of their waiver, the District Court allowed the lien."

And this action was sustained by the Supreme Court.

[8] It is claimed here that the rights of others intervened and that the case is therefore distinguished from Hutchinson v. Otis. We do not think the record discloses that any of the creditors gave credit based on the fact of this Live Stock Exchange certificate as an asset. There is nothing to show that they knew anything about it, or that they knew it was in existence. They had obtained no lien on it, and undoubtedly, had the certificate been kept by the bank and never surrendered under the mistake, the transactions of the creditors would have been the same. They certainly, in extending credit, did not rely on something which they knew nothing about. There was no law of Minnesota with relation to recording such a transaction, and no law giving general creditors any lien on the debtor's property. Nor was

-recordation essential to the validity of the pledge under the Minnesota law. Bradley v. Robie (C. C. A.) 266 Fed. 884.

[9] It is suggested in argument that the situation is changed by the amendment to section 47a (2), Bankruptcy Act (Comp. St. § 9631), reading in part as follows:

" * * * And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

Since that amendment it can no longer be said that the trustee stands in the shoes of the bankrupt with no greater rights. The Supreme Court had held in York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, that a trustee in bankruptcy was vested with no better right or title to the property than the bankrupt had when the trustee's title accrued. The very purpose of the amendment to section 47a was to change this status. The report of the Senate judiciary committee throws light on the intent of the legislative branch of the government as to the scope and purpose of this amendment. That report, after referring to York v. Cassell, says in part:

"In this way, in effect, proceedings in bankruptcy will give to creditors all the rights that creditors under the state law might have had had there been no bankruptcy and from which they are debarred by the bankruptcy—certainly a very desirable and eminently fair position to be granted to the trustee."

Since the adoption of this amendment the right is given to the trustee to question the validity of any lien or pledge that a lien creditor might challenge if there had been no bankruptcy. Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846; In re Lane Lumber Co., 217 Fed. 550, 133 C. C. A. 402; In re Pacific Electric & Automobile Co. (D. C.) 224 Fed. 220; In re Farmers' Co-operative Co. of Barlow, N. D. (D. C.) 202 Fed. 1007; In re Kruse (D. C.) 234 Fed. 470. Speaking of this amendment, Collier on Bankruptcy, p. 728, says:

"If none of the creditors of the bankrupt had a lien by judgment or otherwise against the property in question, the amendment does not increase the trustee's rights, but as to such property he stands in the shoes of the bankrupt."

Section 47a of the Bankruptcy Act, as amended, must be considered in connection with section 70 (Comp. St. § 9654), under which the trustee takes the property of the bankrupt, not as an innocent purchaser, but subject to all valid claims, liens and equities. A bankruptcy court will recognize and allow valid equitable liens. In Britton v. Union Inv. Co., 262 Fed. 111, this court, speaking through Judge Stone, said:

"This position is sound, as against a trustee in bankruptcy, who stands in no better position to avoid an equitable claim of this character under these circumstances than the bankrupt himself."

See, also, Collier on Bankruptcy, 1117; Gadd, Trustee, v. Winders & Dawson, 291 Fed. 327 (opinion of this court filed June 25, 1923);

Galbraith v. First National Bank of Alexandria, Minn., 221 Fed. 386, 137 C. C. A. 194; Atchison, T. & S. F. Ry. v. Hurley, 153 Fed. 503, 82 C. C. A. 453; Id., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729; Cox v. New Eng. Eq. Ins. Co., 247 Fed. 955, 160 C. C. A. 655; American Surety Co. v. Finletter (C. C. A.) 274 Fed. 153; In re Lane Lumber Co., 217 Fed. 550, 133 C. C. A. 402; Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846; Martin v. Com. Nat. Bank of Macon, Ga., 245 U. S. 513, 38 Sup. Ct. 176, 62 L. Ed. 441; Bradley v. Robie (C. C. A.) 266 Fed. 884.

There is nothing in the amendment to section 47a of the Bankruptcy Act that would give the trustee under the circumstances here presented a greater right to challenge an equitable lien as to the property than the bankrupt could have asserted, no creditor having secured any lien.

[10] Appellant gave up its security through a mistake of fact and law, or what might more properly be said to be a mistake as to a mixed question of fact and law. A part of the debt, mistakenly supposed to have been paid, has been revived. Therefore it is entitled to have its security reinstated; the bankrupt estate being no worse off than if the security had been originally retained by appellant, and no creditors having secured any liens in the interim. This is merely applying the most common principle of equity and good conscience to this situation. The order and judgment of the District Court, holding that appellant had no equitable claim to the said certificate or to the proceeds thereof, except as a general creditor of said bankrupt, was erroneous. The judgment as to that matter is reversed, and the court is directed to enter an order establishing the equitable lien of said appellant as to said certificate, or to the proceeds thereof, if the same has been sold. Costs of the appeal to be taxed to appellee.

Reversed.