**PENN MUT. LIFE INS. CO. v. FORCIER et al.**

No. 12130.

District Court, E. D. Missouri, E. D.

Dec. 20, 1937.

Jones, Hocker, Gladney & Grand, of St. Louis, Mo., for plaintiff.

Woodward & Evans, of St. Louis, Mo., for defendant.

COLLET, District Judge.

This action is brought under the Federal Declaratory Judgment Act Section 400, Title 28 U.S.C.A. and seeks the construction of a life insurance policy issued in the sum of $40,000 upon the life of Guy S. Forcier, payable to defendant Henrietta T. Forcier. The facts are undisputed and are set forth in plaintiff's petition and defendants' answer. Those facts will appear in the discussion of the legal questions involved.

Guy S. Forcier applied to plaintiff for a policy of insurance on his life, in the above stated sum, on February 16, 1929, at St. Louis, Missouri. The application provided that if the first premium was not paid at the time of the application the policy issued thereon should not become effective until it was delivered and the first premium paid by applicant during his lifetime and good health. The first premium was not paid at the time of the application. The policy was later issued and was dated February 20, 1929. It was delivered to Forcier on March 18, 1929, at which time the first premium was paid. The policy contained the following provisions: "The amounts and due-dates of premiums, unless otherwise requested as hereinafter provided, are as follows: Eight Hundred Eighteen & 40/100 Dollars at the date hereof, and Eight Hundred Eighteen & 40/100 Dollars on or before the Twentieth day of August and February in every year until the death of the insured; but upon written request premiums may be paid at any of the rates stated on the margin of this page and as provided in Section 5. Policy years shall be computed from the 20th day of February, 1929."

The rates stated in the margin above referred to are as follows: "Age 47—Annual Premium $1604.80—Semi-Annual Premium $818.40—Quarterly Premium $417.20."

The policy further provides for a grace period of thirty-one days for the payment of premiums, through which grace period the policy should remain in force. On September 16, 1929, at Forcier's request, the premiums on the policy were changed from semi-annual to quarterly premiums of $417.20. The request for this change in the payment of premiums was made on a printed form furnished by the company and was as follows:

"St. Louis, Mo. Sept. 16th, 1929.

"I hereby request that my contract of insurance No. 1,400,117 in The Penn Mutual Life Insurance Company be modified as follows:

"That premiums be made payable thereon in quarter annual instalments, viz:

"Four Hundred Seventeen & 20/100 Dollars on the 20th day of February, May, August and November in each contract year during the premium payment term. I agree, in the event of non-payment of any instalment when due, that the insurance shall cease to be in force, except as provided for by non-forfeiture provisions of the contract itself; and that any unpaid portion of the year's premium shall be deducted should the policy become a claim. This change shall not alter in any other respect the said contract of insurance.

"Guy S. Forcier

"Witness:

"Walter H. Ware."

An assignment of the policy was made but since the assignee has since released all claim no further note need be taken of the assignment. Payments were made on a quarterly basis on or prior to the 20th day of February, May, August and November or within thirty-one days thereafter. On March 20, 1936, the insured and the beneficiary requested in writing that the policy be reduced from $40,000 to $15,000. The application therefor was made upon a printed form furnished by the company. The pertinent parts thereof are as follows:

"Change of Policy

"Policy No. 1,400,117 (the $40,000 policy) in The Penn Mutual Life Insurance Company, of Philadelphia, Pennsylvania, on the life of Guy S. Forcier.

"Application is hereby made to The Penn Mutual Life Insurance Company, of Philadelphia, Pa., to change the above policy as follows:

"The Insurance to be reduced to $15,000.00.

\* \* \* \* \* \*

"Signature to this instrument constitutes a surrender of all right, title and interest in the above Policy in consideration of receiving from the Company a new Policy containing the above changes. This surrender and the change requested above shall take effect at the time of signing and delivery hereof unless the change necessitates evidence of insurability and/or the payment of a cost to the Company, in which event such surrender and change shall take effect upon approval by the Company and/or the payment of any cost."

Pursuant to the last mentioned application a new policy was issued bearing the same number as the old and was exactly in the same form as the old policy with the exception of the amount, the premiums, and the date of the payment of the premiums. In the new policy the due-date of the premiums was stated to be "on or before the 20th day of May, August, November and February in every year."

Guy S. Forcier died on April 5, 1936. Claim was made for the payment of the principal amount of the original policy of $40,000. This claim the company denied but the company paid $15,000 under an agreement that such payment should in no manner affect the rights of the parties to the enforcement of such rights as the beneficiary might have for the collection of the principal sum of $40,000, it being agreed that in the event the latter sum should be found to be due the amount theretofore paid should be deducted.

Although not so easily determined, the questions presented may be simply stated as follows:

I. Does the fact that the policy states that: "This contract is made in consideration of the payment in advance to the Company at its Home Office of the first premium hereunder and upon condition that subsequent premiums are paid when due. The amounts and due-dates of premiums, unless otherwise requested \* \* \* are as follows: Eight Hundred Eighteen & 40/100 Dollars at the date hereof, and Eight Hundred Eighteen & 40/100 Dollars on or before the Twentieth day of August and February in every year until the death of the insured; \* \* \* Policy years shall be computed from the Twentieth day of February 1929," and the further fact that the application which is made a part of the policy provides that: "If the premium on the insurance herein applied for is not paid at the time of making this application, the contract of insurance shall not be in force unless or until a policy shall be issued and delivered to me and the first premium thereon actually paid during my lifetime and good health," render the policy ambiguous with respect to the date when the premiums should be paid and thereby permit a construction that the premiums were not due until the date of the delivery of the policy and the payment of the first premium, to-wit: March 18, 1929. If this proposition be answered in the affirmative then it is conceded that the last premium payment made on the original policy would have extended that policy to March 18, 1936, and the grace period of thirty-one days would have further extended it past the date of the death of the insured on April 5, 1936, unless

II. The surrender of the original policy when the change of the amount of the policy was made and the release executed in connection therewith operated as a surrender of all rights under the original policy and precludes a recovery thereon.

It is asserted that the Federal Courts are not required to follow the construction placed upon a contract of insurance by the highest court of the State and that, therefore, the Federal Rule should be followed rather than the so-called Missouri Rule. That question becomes academic and of no present importance if the two rules should be the same. Therefore, the determination of the rule of construction applicable to this particular policy is of primary importance.

III. An examination of the many authorities cited by plaintiff and defendants, and others examined by the Court, discloses that the Missouri rule as laid down in Halsey v. American Central Life Insurance Company, 258 Mo. 659, 167 S.W. 961, does not differ in any material respect from the general rule announced in decisions by the federal courts. The facts presented in this case disclose an ambiguity in the terms of the contract with reference to the effective date of the policy and the date when the premiums were due.

An ambiguity existing, the contract must be construed in the light most favorable to the insured, with the result that the policy must be construed as becoming effec-

tive March 18th instead of February 20th, and that the premiums were actually due on March 18th.

IV. Does the release executed by the insured on March 20, 1936, preclude a recovery upon the policy now under consideration?

Defendants assert that the release of March 20, 1936, is not binding and is ineffective because, First: There was no consideration for the execution of the release, and, Second: It was executed under a misapprehension resulting from a mutual mistake of fact and of law existing at the time of its execution.

V. An analysis of defendants' contention that the release was without consideration leads to the conclusion that it is untenable. They assert that the company gave up nothing and the insured received nothing when the release was executed, the $40,000 policy surrendered and the $15,000 policy issued. They point out that the company did not even return that part of the premium representing the consideration for the insurance from March 20, 1936 (the date of the new policy), to April 21, 1936 (the expiration date of the period of grace under the old policy). If there had been a cancellation of the old policy alone on March 20, 1936, plaintiff's contention would have more force but that was not all that happened. In consideration of the release the company became obligated to insure the life of Guy S. Forcier for $15,000 until May 20, 1936, approximately thirty days after the expiration of the period of grace under the old policy on April 19, 1936. The release states that its execution by defendants was in consideration of this obligation of the company, to-wit, the issuance of the new policy. That is the only consideration referred to in the release. Therefore, it cannot be assumed that the company considered the date of the new policy to be February 20, 1929, although the policy contained the same clause appearing in the original policy, to-wit: "Policy years shall be computed from the 20th day of February, 1929." If that was the date of the new policy it would have had a cash surrender value in excess of $2,250 according to the table of cash values appearing under Section 3 of the policy. If the date of the issuance of the new policy to-wit, March 27, 1936, is assumed to be the date of the policy for the purpose of computing its cash, loan value, etc., then obviously on the date of the issuance of the policy it would have had no cash or loan value whatever. Evidently, that was considered as the date of the policy, otherwise, the release certainly would have referred to the cash value of the new policy as a part of the consideration for the release. The new policy was obviously an extension of the old policy in a reduced amount for reduced premiums. Such an extension was sufficient consideration for the release.

VI. Defendants allege and plaintiff does not deny that: "Obviously, * * * Guy S. Forcier at one time must have known that the policy was delivered to him on March 18, 1929, instead of February 20, 1929, and plaintiff obviously at one time knew that fact, but, in connection with the transaction under which the policy was reduced to Fifteen Thousand Dollars ($15,000.00), neither Guy S. Forcier nor the plaintiff nor these defendants took this fact into consideration, but, on the other hand, all acted upon the assumption that February 20, 1929, was the premium anniversary of the policy."

Defendants allege that, therefore, the parties "were acting under a mutual mistake of fact and of law in assuming that the policy was delivered and became effective as of February 20, 1929, * * *."

A mistake of fact may be caused by a faulty memory as to what the true facts are as well as a complete lack of knowledge at any time of the true facts. When the release was executed both parties may have been laboring under the mistake of fact as to when the policy was delivered and the first premium paid. Upon the pleadings which furnish substantially the only source from which the facts may be found this fact must be assumed to be true. It is further asserted by defendants that the parties erroneously assumed that the effective date of the policy and the date when the premiums were due was February 20th, when actually it was March 18th. This latter conclusion was a misconception of the legal effect of the policy and the application. While it is the general rule frequently announced that a mistake of law will not effect the enforcibility of an agreement, yet there are exceptions to this general rule. Different theories are advanced as the reason for the exceptions. In 13 Corpus Juris, Section 268, Page 379, it is stated:

"To the general rule that mistake of law is no ground for relief there are cer-

tain exceptions or apparent exceptions. Mistake as to particular private rights is treated as mistake of fact or as a mixed mistake of law and fact. Private rights of property, although they are the result of rules of law, or depend on rules of law applied to the construction of legal instruments, are usually considered matters of fact."

In 53 Corpus Juris, Section 32, Page 1216, under the head of release is found the following general statement: "For a mutual mistake of law a release may, in some but not all jurisdictions, be set aside. Questions as to a mistake of law on the part of only one party to a release are governed by the general rule that ignorance of law excuses no one; * * * However, * * * the release may be avoided * * * where there is a misapprehension of law by one party and knowledge thereof, but failure to rectify, by the other."

Although mistakes resulting from a failure to set out the actual agreement of the parties in proper legal terms should be distinguished from the case at hand, yet the general language in Taylor v. Holmes, C.C., 14 F. 498, loc. cit. 503, demonstrates the early recognition of exceptions to the general rule. It is there stated: "Although it is a general rule that a mistake of law furnishes no ground for the interference of a court of equity, yet this rule is sometimes departed from when there is a plain, admitted, or undisputed mistake of law arising from ignorance or inadvertance. Snell v. Ins. Co., 98 U. S. 85 [25 L. Ed. 52]."

In the case of In re Smith-Flynn Commission Co., 8 Cir., 292 F. 465, the identical principle involved in the case at bar was discussed and determined. In that case the Commission Company was in debt to a bank. To secure that debt it pledged its certificate of membership in a stock exchange. The bank cancelled the Commission Company's indebtedness by applying the Commission Company's balance in a checking account to the debt. Both parties assumed that the debt had been paid by that transaction, and the bank delivered the membership certificate to the Commission Company with the intention of releasing its lien thereon. However, immediately prior to the application of the checking account on the debt and its presumed cancellation, checks drawn by the Commission Company on its checking account had been presented to the bank and payment refused thereon. Suit was thereafter brought and judgment obtained against the bank for the amount of these checks which the bank had improperly refused to pay. The judgment was paid and the bank promptly made a claim in the Bankruptcy Court against the bankrupt estate of the Commission Company (adjudication in bankruptcy was subsequent to the attempted cancellation of the debt) for the amount of the debt owed the bank by the Commission Company and asked that the bank's lien on the membership certificate be re-established. The above related facts demonstrate that the mistake there involved related to the legal effect of the refusal to pay the Commission Company's checks and the consequent erroneous legal assumption that the Commission Company's debt to the bank was cancelled by the application of the checking account to the debt. In discussing the legal effect of the return of the membership certificate to the Commission Company by the bank, the court said (loc. cit 471):

"In this case the certificate of the Live Stock Exchange was in the hands of appellant until returned to the bankrupt under the mistaken idea that the debt of the bankrupt to it had been paid. Did the surrender of the certificate by appellant to the Commission Company under a mistake end the pledge? It was a mutual mistake. The Commission Company supposed its debt to the bank was paid, and so did the bank. The rule as to mistake is nowhere more clearly stated than in the case of In re Swift (D.C.) 111 F. 503, 506, as follows:

"'That ignorance of the law excuses no one is not a maxim of universal application. Against some mistakes of law a court of bankruptcy will relieve. * * *'

\* \* \* \* \* \*

"It is clear from these discussions that courts of equity will grant relief where there is mutual mistake, even if the mistake be one of law [Citing cases].

\* \* \* \* \* \* \*

"Appellant gave up its security through a mistake of fact and law, or what might more properly be said to be a mistake as to a mixed question of fact and law. A part of the debt, mistakenly supposed to have been paid, has been revived. Therefore it is entitled to have its security reinstated * * *. This is merely applying the most common principle of equity and good conscience to this situation."

In the case at bar the insured executed the release and relieved the company of the responsibility of paying his beneficiary $40,000 upon the assumption that the policy had been delivered on February 20th, and that the legal effect of the application and the policy required the payment of the premium on February 20th, 1936. Insured and plaintiff both assumed that the insurance had lapsed and the period of grace would expire on March 21, 1936, when in fact his insurance did not expire finally until thirty-one days subsequent to March 18, 1936. It cannot be questioned that the plaintiff was proceeding upon the theory that the period of grace would expire thirty-one (31) days subsequent to February 20, 1936. It has always made that contention and it is now urging it with vigor and earnestness. Since the release was executed through a mistake as to a mixed question of fact and law, it is not a bar to recovery.

VII. Wherefore, the court declares the law to be that upon the date of the death of Guy S. Forcier on April 5, 1936, the policy of insurance issued by plaintiff upon the life of Guy S. Forcier in the amount of $40,000, referred to as Policy of Life Insurance No. 1,400,117, was in full force and effect and under its terms the plaintiff became obligated to pay to the insured's beneficiaries, the defendants herein, the sum of $40,000. The court further finds that Henrietta T. Forcier is the beneficiary entitled to the payment aforesaid; that there has been paid the sum of $15,000 by plaintiff to Henrietta T. Forcier, which sum should be deducted from the amount due; that the defendant William H. Woodward is a nominal defendant only because of the fact that his interest in the policy as assignee thereof has been released.

It is therefore ordered, adjudged, and decreed, that the defendant Henrietta T. Forcier have and recover from the plaintiff, The Penn Mutual Life Insurance Company, a corporation, judgment in the amount of Twenty-five Thousand Dollars ($25,000.00) with interest thereon from the 29th day of March, 1937, the date of the institution of this action, at the rate of six per cent (6%) per annum and for her costs herein expended.